FENNEMORE CRAIG, P.C.
Amy Abdo
CA Bar No. 148996
3003 North Central Avenue
Suite 2600
Phoenix, AZ 85012-2913
Telephone: (602) 916-5000
Email: amy@fclaw.com

Attorneys for Defendants
Mike Nelson and Redwood Publications,
LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE INSIDE EDGE, LLC, a California limited liability company, | No. CV08-02665AHM (RCx) |
| Plaintiff, | |
| v. | NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C § 1441(b) (DIVERSITY) |
| MIKE NELSON, an individual; REDWOOD PUBLICATIONS, LLC, an Arizona limited liability company; CONSTRUCTION TRADER, a business entity of unknown form; and DOES 1 through 25, inclusive, | |
| Defendants. | |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that defendants Mike Nelson and Redwood Publications, LLC hereby remove to this Court the state court action described below.

1.    On March 20, 2008, an action was commenced in the Superior Court of the State of California in and for the City and County of Los Angeles, entitled The Inside Edge, LLC, a California limited liability company, Plaintiff v. Mike Nelson, an individual; Redwood Publications, LLC, an Arizona limited liability company; Construction Trader, a business entity of unknown form; and Does 1

FENNEMORE CRAIG, P.C.
PHOENIX

NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C 1441(b) (DIVERSITY)

1   through 25, inclusive, Defendants, as Case Number LC080878.   A copy of the
2   complaint is attached hereto as Exhibit "1".

3       2.   The first date upon which defendants Mike Nelson and Redwood
4   Publications, LLC received a copy of the said complaint was March 24, 2008, when
5   defendants were served with a copy of the said complaint and a summons from the
6   said state court.  A copy of the summons is attached hereto as Exhibit "2".

7       3.   This action is a civil action of which the Court has original jurisdiction
8   under 28 U.S.C. § 1332, and is one which may be removed to this Court by
9   defendants pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil
10  action between citizens of different states and the matter in controversy exceeds the
11  sum of $75,000, exclusive of interest and costs because Plaintiff alleges in
12  paragraph 10 of the Complaint that the contract Defendants allegedly breached was
13  one that "provided for Redwood to pay TIE monthly payments totaling hundreds of
14  thousands of dollars."  The alleged renegotiated contract attached as Exhibit B to
15  the Complaint that Defendants allegedly breached contains as its Exhibit A a sales
16  projection chart listing total sales projections in the hundreds of thousands of
17  dollars for 2008.  In paragraph 13 of the Complaint, Plaintiff alleges that the alleged
18  renegotiated contract that Defendants allegedly breached "obligated Redwood to
19  pay TIE hundreds of thousands of dollars during 2008."  In paragraphs 39 and 40 of
20  the Complaint, Plaintiff alleges that it has been damaged "in the hundreds of
21  thousands of dollars" because of Defendants' alleged breach.

22      4.   Complete diversity of citizenship exists in that: Plaintiff The Inside
23  Edge, LLC is a California limited liability company with its principal place of
24  business in Los Angeles County, California.  All of the members of The Inside
25  Edge (Christopher Christopherson) are citizens of California.  Defendant Mike
26  Nelson is a citizen of Arizona; and Defendant Redwood Publications, LLC is an
27  Arizona limited liability company with its principal place of business in Maricopa
28  County, Arizona.  All of the members of Redwood Publications, LLC (Karen

1   Nelson, Mike Nelson, Shane Williams, and Tricia Williams) are citizens of

2   Arizona. Plaintiff also named Does 1 through 25 as defendants, but the inclusion of

3   such defendants have no effect on removability. "For purposes of removal … the

4   citizenship of defendants sued under fictitious names shall be disregarded." 28

5   U.S.C. § 1441(a). Defendant Construction Trader is not an entity – Plaintiff's

6   Complaint refers to it as a "business entity of unknown form." It is simply the

7   name of the publication that defendants (all Arizona citizens) sought to publish that

8   is at issue in this dispute. It was erroneously named as a defendant by Plaintiff and

9   has no citizenship for removal purposes.

10   DATED *April 22, 2008* .

11   FENNEMORE CRAIG, P.C.

12

13   By *Amy Abdo*

14   Amy Abdo
     Attorneys for Defendants
15   Mike Nelson and Redwood
     Publications, LLC

16

17   2053978.1

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
PHOENIX

- 3 -

NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C 1441(b) (DIVERSITY)

P. 4
Ex.

**EXHIBIT 1**

Michael H. Raichelson, Esq. (SBN. 174607)
**ROXBOROUGH, POMERANCE & NYE LLP**
5820 Canoga Avenue, Suite 250
Woodland Hills, California 91367
Telephone: (818) 992-9999
Facsimile: (818) 992-9991

Attorneys for Plaintiff
THE INSIDE EDGE, L.L.C.

MAR 2 0 2008

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – NORTHWEST DISTRICT

| | |
|---|---|
| THE INSIDE EDGE, L.L.C., a California limited liability company, | CASE NO. **LC080878** |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| MIKE NELSON, an individual; REDWOOD PUBLICATIONS, L.L.C., an Arizona limited liability company; CONSTRUCTION TRADER, a business entity of unknown form; and DOES 1 through 25, inclusive, | |
| Defendants. | |

Plaintiff, THE INSIDE EDGE, L.L.C., alleges:

### COMMON ALLEGATIONS

1.    Plaintiff THE INSIDE EDGE, L.L.C. ("TIE") is, and at all relevant times herein mentioned was, a California limited liability company doing business in Los Angeles County, California.

2.    TIE is informed and believes and thereon alleges that defendant Redwood Publications, L.L.C. ("Redwood") is a limited liability company and held itself out to the general public in its letterhead and on its website as having an office in Agoura Hills, California.

///

1
**COMPLAINT**

P.5
Exh 1

3.   TIE is informed and believes and thereon alleges that defendant Construction Trader is a business entity of unknown form doing business in Los Angeles County, California, and is also known as Redwood Publications, L.L.C.

4.   Defendant Mike Nelson ("Nelson") is an individual doing business in Los Angeles County, California.  At all relevant times, Nelson represented to TIE that he was and is the President and Chief Executive Officer ("CEO") of Construction Trader and an authorized agent of Redwood for purposes of negotiating and entering into contracts with TIE.  At all relevant times, Nelson engaged in negotiations with and oversaw Redwood Publications, L.L.C. and Construction Trader's California operations.  To that end, TIE is informed and believes that Nelson traveled to California in late 2007 to finalize the relationship between TIE, Redwood and Construction Trader.  In addition, representatives of Redwood and/or Construction Trader traveled to California on Nelson's behalf on more than one occasion in 2007 and 2008 to monitor and/or discuss TIE's operations located in California.

5.   TIE does not know the true names and capacities of Defendants sued as Does 1 through 25, inclusive, and therefore sues those Defendants by fictitious names.  TIE reserves the right to amend this Complaint when necessary to allege their true names and capacities when that is ascertained.  TIE is informed and believes and thereon alleges that each of these fictitiously-named Defendants is liable and legally responsible to TIE, in some manner, for the obligations and matters herein alleged.

6.   Defendants, and each of them, are, and at all times herein mentioned were, the agents of the other Defendants and, in doing the things herein alleged, were acting within the course and scope of their agency and authority.

7.   TIE is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the alter-egos of the other Defendants in this action, such that the corporate or other business entity identity of said Defendants was not respected, that there was an identity of ownership and control between and among the Defendants, and each of them, sufficient for the Court to "pierce the corporate veil" and that to treat the separate existence of the entity Defendants would cause a fraud upon TIE.  TIE further seeks to pierce the corporate veil to

1   hold Nelson liable for the debts of Redwood and/or Construction Trader, as their alter ego.

2        8.    Defendants Nelson and Does 1 through 10 (the "Non-limited liability company

3   Defendants") were controlling members of Defendants Redwood and/or Construction Trader, and

4   that there existed between the Non-limited liability company Defendants and Redwood and/or

5   Construction Trader, a unity of interest and ownership, such that any individuality and

6   separateness between the Non-limited liability company Defendants and Redwood and/or

7   Construction Trader, never existed or has ceased, and that the Non-limited liability company

8   Defendants are the alter ego of the Redwood and/or Construction Trader, in that:

9       a.    Redwood and/or Construction Trader were conceived, intended and used by Non-

10           limited liability company Defendants, and each of them, as a device for the purpose

11           of substituting a financially insolvent company in the place of the Non-limited

12           liability company Defendants to avoid individual liability for the malfeasance

13           alleged herein;

14       b.    The Non-limited liability company Defendants, and each of them, held themselves

15           out to TIE and to other creditors that they were personally responsible for the debts

16           of Redwood and/or Construction Trader, including the income that was earned by

17           TIE for the contracts identified herein;

18       c.    The Non-limited liability company Defendants, and each of them, used the assets

19           of Redwood and/or Construction Trader for their own purposes as though it were

20           their own, and caused assets of Redwood and/or Construction Trader to be

21           transferred to them, or to entities they controlled, or to their family members,

22           without adequate consideration and to avoid creditors, including employees;

23       d.    The Non-limited liability company Defendants, and each of them, dominated and

24           controlled the finances of Redwood and/or Construction Trader, treated the

25           company accounts as their personal bank accounts, and commingled corporate and

26           personal funds for their personal use and to avoid creditors of Redwood and/or

27           Construction Trader, including TIE; and

28   ///

---

e.   The Non-limited liability company Defendants, and each of them, completely disregarded the company formalities and separateness of Redwood and/or Construction Trader, in that the operations of Redwood and/or Construction Trader, were carried out without regard to limited liability company formalities.

9.   During October 2007 and thereafter, Nelson misrepresented to TIE that Redwood and Construction Trader were sufficiently capitalized to print and publish a periodical known as the "Construction Trader". Nelson also misrepresented to TIE that he was an expert in the publishing and advertising industry, that Redwood and/or Construction Trader had sufficient resources to make the Construction Trader viable and a leader as to advertising for new and used construction related equipment and services. Nelson also misrepresented to TIE that Redwood was committed financially for at least a year to make Construction Trader viable and a leading advertiser for new and used construction related equipment and services. Finally, Nelson misrepresented to TIE on several occasions during October 2007 and thereafter that Redwood was in the process of and had received potentially millions of dollars in financing to fulfill its obligations and commitments to TIE if TIE agreed to enter into a contract or contracts with Redwood – through Nelson. Redwood, through Nelson, fraudulently induced TIE, at considerable time and expense, to create an inside call environment for the purpose of producing advertising sales for Construction Trader.

10.   Based on the aforementioned misrepresentations, in October 2007, TIE and Redwood – through Nelson – entered into a contract for TIE to create an inside call environment for producing advertising sales for the Construction Trader. Attached hereto as **Exhibit "A"** is a true and correct copy of this contract. This contract provided for Redwood to pay TIE monthly payments totaling hundreds of thousands of dollars.

11.   Based on the misrepresentations of Nelson, TIE did in fact create and set up an inside call environment for the purpose of producing advertising sales for Construction Trader. Also, based on said misrepresentations, TIE began to perform under the contract and did in fact produce advertising sales for Redwood in November and December of 2007.

///

P.&.
Exh. 1

12.     In December 2007, Nelson approached TIE and requested that the aforementioned contract be renegotiated. During the renegotiations, Nelson restated and misrepresented to TIE that Redwood was sufficiently capitalized to print and publish the Construction Trader, that Nelson was an expert in the publishing and advertising industry, and that Redwood had sufficient resources to make the Construction Trader a viable publication and a leader as to advertising for new and used construction related equipment and services. Nelson again misrepresented to TIE during these renegotiations that Redwood and Nelson were financially committed for at least year to make Construction Trader a viable publication and a leading advertiser for new and used construction related equipment and services. Nelson also misrepresented to TIE on several occasions during these renegotiations that Redwood had sufficient resources and monies to fulfill its obligations and commitments to TIE if TIE agreed to enter into a new and renegotiated contract with Redwood – through Nelson. Redwood, through Nelson, induced TIE, at considerable time and expense, to continue with its inside call environment during the first half of 2008 for the purpose of producing advertising sales for Construction Trader. In a further effort to induce TIE into executing the renegotiated contract, Nelson misrepresented to TIE that Redwood would not opt out of the renegotiated contract for at least six months. In fact, during the negotiations on December 31, 2007, Nelson misrepresented that "for what it is worth, I can tell you that I am totally cool with giving the six month 'no opt out' scenario you requested. **That is a given.**" (Emphasis added). In other words, Nelson confirmed that the renegotiated contract would continue at least through June of 2008 without any cancellation and/or modifications. Also, Nelson knew during his negotiations with TIE, that TIE's primary business expense and/or priority was ensuring that its representatives and/or employees were paid in a timely manner and in full, and that continuing to produce advertising for Construction Trader required commitments from Redwood that payments under the renegotiated contract would be made timely so that TIE could fulfill this priority.

13.     On our about January 8, 2008, Nelson, on behalf of Redwood, executed the renegotiated contract. Attached hereto as **Exhibit "B"** is a true and correct copy of the renegotiated contract executed by Nelson. Under the terms of this renegotiated contract, Redwood

p.9
Exh 1

1   was obligated to pay TIE fixed monthly payments ranging from $30,000 to $40,000 for 2008.  In

2   addition, Redwood was obligated to pay TIE variable monthly payments in addition to the fixed

3   monthly payments.  The renegotiated contract also had the potential for quarterly bonus payments.

4   In total, the terms and conditions of this renegotiated contract obligated Redwood to pay TIE

5   hundreds of thousands of dollars during 2008.

6          14.     Based on the misrepresentations of Nelson during the renegotiations and thereafter,

7   TIE did in fact continue to operate an inside call environment for the purpose of producing

8   advertising sales for Construction Trader.  Also, based on said misrepresentations, TIE continued

9   to perform under the renegotiated contract and did in fact, produce advertising sales for Redwood

10  in the initial months of 2008.  In addition, pursuant to the terms and conditions of the parties'

11  agreement, TIE invoiced Redwood for services rendered for January 2008.  TIE also requested

12  payments that were due and owing under the parties' agreement for February and March 2008.

13  Notwithstanding, Redwood failed and/or refused to honor the parties' agreement and failed and/or

14  refused to pay TIE under the contract.

15         15.     On or about January 31, 2008 and contrary to the express terms of the parties'

16  renegotiated contract and negotiations leading up to the execution of said contract – that Redwood

17  would not opt out of said contract for at least six months – Redwood, through Nelson, breached

18  said contract and indicated an intent to opt out of said contract effective the end of March 2008.

19  Redwood, through Nelson, also misrepresented on January 31, 2008 that it would continue to

20  perform under said contract to at least the end of March 2008.  Also, on or about January 31, 2008,

21  Redwood, through Nelson, misrepresented to TIE that it would continue to pay TIE under the

22  terms of the contract through at least March 2008.  From January 2008 through March 2008,

23  Nelson repeatedly misrepresented that it would pay TIE for the outstanding invoices so that TIE

24  was induced to continue generating advertising sales and revenue for Redwood and Construction

25  Trader during said time period.  Also, based on these misrepresentations, TIE continued to employ

26  a sales force for the purpose of generating advertising sales for Redwood and Construction Trader

27  during said time period.  For example, on February 4, 2008, Nelson misrepresented to TIE that he

28  would "look [the January 2008] invoice over and get [TIE] taken care of."  In addition, on

p. 10
Exh 1

1  February 11, 2008, Nelson instructed TIE to "try real hard to close another deal". Also on

2  February 11, 2008, TIE requested to know from Nelson when TIE would be receiving payment for

3  the January 2008 invoice in that TIE was relying upon payment to compensate its representatives

4  and/or employees for work performed for Redwood. In response, Nelson indicated that he was

5  "spending [February 11, 2008] and Tuesday hitting every possible avenue . . . to get cash [] so

6  that" TIE's representatives and/or employees could "cash their paychecks". Also in a February

7  2008 e-mail, Nelson misrepresented to TIE that Redwood had money "coming in next week" so

8  that TIE could "get paid". Nelson also stated in this February 2008 communiqué that he was "in

9  bank as we speak". On February 19, 2008, Nelson again misrepresented to TIE that Redwood

10  would "live up to our financial obligations to you. It just has taken a little longer than expected."

11  On February 25, 2008, Nelson again misrepresented to TIE that he was "still getting arms around

12  funding" and that he would contact TIE "this week" to discuss getting money over to TIE. Again,

13  on February 26, 2008 and in response to TIE's request for payment, Nelson misrepresented to TIE

14  that "money is due in this week." On or about February 28, 2008, Nelson requested TIE's wiring

15  instructions so that Redwood could wire funds to TIE's bank account to pay TIE for the

16  outstanding amounts. In response and as requested, TIE sent Nelson the wiring instructions on

17  February 28, 2005. On February 29, 2008, Nelson again misrepresented to TIE in an email that he

18  could give "100% commitment to be able to give" TIE funds the following week towards the

19  outstanding amounts owed, and that it would be a "minimum of" $15,000. Nelson also

20  misrepresented that getting TIE paid was a "priority", and that Redwood would pay TIE "each

21  frkn week if we have to."

22  ### FIRST CAUSE OF ACTION

23  **(Against Defendants Redwood, Construction Trader, Nelson and Does 1-25**

24  **For Fraudulent Inducement of Contract)**

25       16.    TIE hereby realleges and incorporates herein in full the allegations contained in

26  Paragraphs 1 through 15 inclusive.

27       17.    During the course of the solicitation and negotiation of the original contract,

28  Defendants Redwood and Construction Trader – through Nelson – falsely and fraudulently and

p. 11
Exh. 1

1   with the intent to deceive and defraud represented to TIE that 1) Redwood and Construction

2   Trader were sufficiently capitalized to print and publish a periodical known as the "Construction

3   Trader"; 2) Nelson was an expert in the publishing and advertising industry; 3) Redwood and/or

4   Construction Trader had sufficient resources to make the Construction Trader viable and a leader

5   as to advertising for new and used construction related equipment and services; 4) Redwood was

6   committed financially for at least a year to make Construction Trader viable and a leading

7   advertiser for new and used construction related equipment and services; and 5) Redwood was in

8   the process of and had received potentially millions of dollars in financing to fulfill its obligations

9   and commitments to TIE if TIE agreed to enter into a contract or contracts with Redwood.

10  Redwood, through Nelson, fraudulently induced TIE, at considerable time and expense, to create

11  an inside call environment for the purpose of producing advertising sales for Construction Trader.

12  These statements were in fact false.

13      18.    At the time these misrepresentations were made by Nelson on behalf of Redwood

14  and Construction Trader, Nelson knew that these statements were false.

15      19.    At all relevant times, had TIE known the true facts and that these statements were

16  in fact false, TIE would not have entered into the original contract.

17      20.    TIE was damaged as a result of Defendants conduct in that it would not have 1)

18  created an inside call environment at considerable time and expense for the purposes described

19  herein; 2) would not have entered into the original contract; and, 3) would not have continued to

20  operate the inside call environment – at considerable time and expense – if it knew that

21  Defendants statements were in fact false.

22      21.    As a proximate result of the misrepresentations set forth above in this Complaint,

23  TIE was induced to enter into the original contract and induced to continue to operate the inside

24  call environment and make payments to vendors, employees, independent contractors and

25  suppliers, and to suffer other special and general damages according to proof.

26      22.    Defendants Redwood, Construction Trader and Nelson were guilty of fraud, malice

27  and oppression as defined in Civil Code § 3294, and TIE should recover, in addition to actual

28  damages, damages to make an example of and punish these Defendants.

P. 12
Exh. 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SECOND CAUSE OF ACTION

**(Against Defendants Redwood, Construction Trader, Nelson and Does 1-25**

**For Fraudulent Inducement of Contract)**

23.     TIE hereby realleges and incorporates herein in full the allegations contained in Paragraphs 1 through 22 inclusive.

24.     During the course of the solicitation and negotiation of the renegotiated contract, Defendants Redwood and Construction Trader – through Nelson – falsely and fraudulently and with the intent to deceive and defraud represented to TIE that 1) Redwood and Construction Trader were sufficiently capitalized to print and publish a periodical known as the "Construction Trader"; 2) Nelson was an expert in the publishing and advertising industry; 3) Redwood and/or Construction Trader had sufficient resources to make the Construction Trader viable and a leader as to advertising for new and used construction related equipment and services; 4) Redwood was committed financially for at least a year to make Construction Trader viable and a leading advertiser for new and used construction related equipment and services; and 5) Redwood was in the process of and had received potentially millions of dollars in financing to fulfill its obligations and commitments to TIE if TIE agreed to enter into a renegotiated contract or contracts with Redwood.  Redwood, through Nelson, fraudulently induced TIE, at considerable time and expense, to continue operating an inside call environment for the purpose of producing advertising sales for Construction Trader.  These statements were in fact false.

25.     At the time these misrepresentations were made by Nelson on behalf of Redwood and Construction Trader, Nelson knew that these statements were false.

26.     At all relevant times, had TIE known the true facts and that these statements were in fact false, TIE would not have entered into the renegotiated contract.

27.     TIE was damaged as a result of Defendants conduct in that it would not have 1) continued to operate an inside call environment at considerable time and expense for the purposes described herein; and, 2) would not have entered into the renegotiated contract, if it knew that Defendants statements were in fact false.

///

P. 13
Exh. 1

1    28.    As a proximate result of the misrepresentations set forth above in this Complaint,

2  TIE was induced to enter into the renegotiated contract and induced to continue to operate the

3  inside call environment and make payments to vendors, employees, independent contractors and

4  suppliers, and to suffer other special and general damages according to proof.

5    29.    Defendants Redwood, Construction Trader and Nelson were guilty of fraud, malice

6  and oppression as defined in Civil Code § 3294, and TIE should recover, in addition to actual

7  damages, damages to make an example of and punish these Defendants.

8                              **THIRD CAUSE OF ACTION**

9      **(Against Defendants Redwood, Construction Trader, Nelson and Does 1-25 For Fraud)**

10    30.    TIE hereby realleges and incorporates herein in full the allegations contained in

11  Paragraphs 1 through 29 inclusive.

12    31.    During the course of performing under the original contract and the renegotiated

13  contract, Defendants Redwood and Construction Trader – through Nelson – falsely and

14  fraudulently and with the intent to deceive and defraud represented to TIE that 1) Redwood and

15  Construction Trader were sufficiently capitalized to print and publish a periodical known as the

16  "Construction Trader"; 2) Nelson was an expert in the publishing and advertising industry; 3)

17  Redwood and/or Construction Trader had sufficient resources to make the Construction Trader

18  viable and a leader as to advertising for new and used construction related equipment and services;

19  4) Redwood was committed financially for at least a year to make Construction Trader viable and

20  a leading advertiser for new and used construction related equipment and services; 5) Redwood

21  was in the process of and had received potentially millions of dollars in financing to fulfill its

22  obligations and commitments to TIE; and, 6) Redwood would fulfill its obligations and get TIE

23  paid per the parties' agreements if TIE agreed to continue operating under the contracts with

24  Redwood.  Redwood, through Nelson, fraudulently induced TIE, at considerable time and

25  expense, to continue operating an inside call environment for the purpose of producing advertising

26  sales for Construction Trader.  These statements were in fact false.

27    32.    At the time these misrepresentations were made by Nelson on behalf of Redwood

28  and Construction Trader, Nelson knew that these statements were false.

10
**COMPLAINT**

P. 14
Ex 1

33.   At all relevant times, had TIE known the true facts and that these statements were in fact false, TIE would not have continued to perform under the contracts.

34.   TIE was damaged as a result of Defendants conduct in that it would not have continued to operate an inside call environment at considerable time and expense for the purposes described herein if it knew that Defendants statements were in fact false.

35.   As a proximate result of the misrepresentations set forth above in this Complaint, TIE was induced to continue to operate the inside call environment and make payments to vendors, employees, independent contractors and suppliers, and to suffer other special and general damages according to proof.

36.   Defendants Redwood, Construction Trader and Nelson were guilty of fraud, malice and oppression as defined in Civil Code § 3294, and TIE should recover, in addition to actual damages, damages to make an example of and punish these Defendants.

### FOURTH CAUSE OF ACTION

**(Against Defendants Redwood, Construction Trader, Nelson and Does 1-25**

**For Breach of Contract)**

37.   TIE hereby realleges and incorporates herein in full the allegations contained in Paragraph 1 through 36 inclusive.

38.   TIE is informed and believes and on such information and belief alleges that in October 2007, the parties entered into a contract as described herein.  In January 2008, the parties renegotiated the contract and entered into the renegotiated contract as described herein.

39.   Defendants and each of them breached the original contract and/or the renegotiated contract in that they failed and/or refused to pay TIE hundreds of thousands of dollars, as required by the parties' agreements, for at least the first six months of 2008, if not the entire year of 2008. Except for that performance which was excused because of Defendants' wrongdoing, TIE performed all of its obligations under the parties' agreements.

40.   TIE was damaged in an amount equal to or greater than the amounts that should have been paid for 2008 in the hundreds of thousands of dollars.

///

p.15
EX 1

1    WHEREFORE, TIE prays for judgment as follows:

2        A.    For compensatory damages according to proof;

3        B.    For punitive damages;

4        C.    For costs of this suit; and

5        D.    For such other and further relief the Court deems just and proper.

6

7    DATED: March 20, 2008                    ROXBOROUGH, POMERANCE & NYE LLP

8

9                                             _____

10                                            MICHAEL H. RAICHELSON
                                              Attorneys for Plaintiff
11                                            THE INSIDE EDGE, L.L.C.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

p. 16
Exh 1

# EXHIBIT A

p. 17
- EXM

# SERVICES CONTRACT

## FOR

### REDWOOD PUBLICATIONS

This contract is made and entered into on this _____ day of October 2007 by and between REDWOOD PUBLICATIONS ("REDWOOD") and THE INSIDE EDGE, L.L.C. ("TIE").

WHEREAS REDWOOD intends to print and publish a periodical known as the "Construction Trader";

WHEREAS REDWOOD has determined that it is legal, feasible and cost effective to contract with TIE to create an Inside Call Environment for producing advertising sales for the Construction Trader; and

WHEREAS TIE is a firm specializing in establishing Inside Call Environments and other services;

NOW THEREFORE, in consideration of the mutual covenants contained herein, and for good and valuable consideration, the parties agree to the following:

1.   **CONTRACT TERM**

Subject to Paragraph 5 below, this Agreement will commence November 1, 2007 and continue for a period of 14 months until December 31, 2008. The term of this Agreement will renew automatically on the terms and conditions stated in this Agreement for an additional _____ months following expiration of the initial or extended terms unless either party notifies the other, in writing, at least 90 days prior to the end of the then existing term of this Agreement of the terminating party's decision not to renew this Agreement.

2.   **COMPENSATION AND INVOICES**

TIE will invoice REDWOOD for all work performed during the prior month on the first day of December 2007 and on the first day of every month thereafter for work performed during the prior month, and REDWOOD will pay TIE within five days of the date of the invoice. TIE will be paid for its services as calculated below and pursuant to the following schedules:

**Fixed Monthly Payments**

a) A payment of $19,000 for services performed for the month of November 2007; b) a payment of $25,000 for services performed for the month of December 2007; c) a payment of $31,000 for services performed for the

P. 18
Exh. 1

month of January 2008; and d) monthly payments of $31,357 for services performed for the month of February 2008 and for every month thereafter and continuing until this Agreement is terminated.

**Variable Monthly Payments**

a) Three monthly payments equal to 3% of total monthly sales orders for the months of November 2007, December 2007 and January 2008; b) three monthly payments equal to 9.5% of total monthly sales orders for the months of February 2008, March 2008, and April 2008; c) monthly payments equal to 21% of total monthly sales orders for the months May 2008 through December 2008; and d) monthly sales equal to 13% of total monthly sales orders for every month thereafter and continuing until this Agreement is terminated.

**Quarterly Bonus Payments**

Quarterly bonus payments equal to 2% of total sales orders for each quarterly period beginning November 2007 and continuing quarterly thereafter until this Agreement is terminated if quarterly total sales orders equal or exceed 15% of the total quarterly sales orders projections for any given quarterly period as set forth in the attached Exhibit "A".

3.    **TIB RESPONSIBILITIES**

TIB will be responsible for and provide the following services:

a)   Establishing an inside call environment and equipping office space with furniture, computers, printers, facsimile machines, telephones, and copiers;

b)   Recruiting, hiring, staffing, developing, and managing sales representatives representing REDWOOD;

c)   Designing, implementing, and managing operations, including training, pre-call planning, call execution, and post-call procedures;

d)   Designing, implementing, and managing operational meetings, information technology, and the REDWOOD culture (including Performance Management); and

e)   Establishing and reporting performance metrics for quotas (sales and activities), productivity (calls, contacts, and sales), and evolving strategic analytics (ACT to CNV to MNT, regional, types, etc.).

///
///
///
///
///

4.      REDWOOD RESPONSIBILITIES

REDWOOD is responsible for a) providing all leads to TIE for potential sales, which will be provided to TIE on an ongoing basis; b) collecting all monies resulting from the sales generated by TIE's efforts; c) drafting and publicizing the periodical that is the subject of this Agreement; and d) making timely payments to TIE for TIE's services.

5.      OPTION TO CANCEL OR RESTRUCTURE

TIE will use its best efforts to reach the sales projections as set forth in Exhibit "A", and REDWOOD will use its best efforts to assist TIE in reaching the sales projections as set forth in Exhibit "A".

**Five Month Sales Projections**

If the total actual sales for the first five months are less than 50% of the total sales orders projections for the first five months as set forth in Exhibit "A", REDWOOD will have the option to terminate this Agreement upon providing TIE no less than thirty days notice of REDWOOD's intent to terminate this Agreement.  Alternatively, REDWOOD will have the right to restructure this Agreement pursuant to the mutual agreement of the parties.

**Eight Month Sales Projections**

If the total actual sales for the first eight months are less than 70% of the total sales orders projections for the first eight months as set forth in Exhibit "A", REDWOOD will have the option to terminate this Agreement upon providing TIE no less than thirty days notice of REDWOOD's intent to terminate this Agreement. Alternatively, REDWOOD will have the right to restructure this Agreement pursuant to the mutual agreement of the parties.

Any notice to terminate this Agreement under this Paragraph must be in writing and provided to TIE within 5 days after receipt by REDWOOD of the total actual sales numbers for any time period described in this Paragraph.

6.      DATABASES

Any and all databases used by TIE for the purpose of providing the services to REDWOOD as described herein are the sole property of REDWOOD, and said databases must be turned over and/or returned to REDWOOD within 10 days of completion and/or termination of the this Agreement.

///
///
///
///

P. 20
Exh 1

7.   ASSIGNMENT

This Agreement may not be assigned by either party without the prior written concurrence of the other party. Any assignment without such prior written concurrence will be null and void.

8.   MODIFICATION AND AMENDMENT OF TERMS

This Agreement may only be amended or otherwise modified by a writing signed by both REDWOOD and TIE.

9.   VALIDITY

The invalidity in whole or in part of any provision of this Agreement will not void or affect the validity of any other provision.

10.   NOTICES

Notices to TIE will be addressed to _____
_____ or such other address as may be hereinafter designated by TIE.

Notices to REDWOOD will be addressed to _____
_____ or such other address as may be hereinafter designated by REDWOOD.

11.   ACCELERATION

If REDWOOD is sold, becomes insolvent and/or is dissolved prior to the expiration of this Agreement, all of the fixed monthly payments identified under the Fixed Monthly Payments schedule of Paragraph 2 will become immediately due and payable, at TIE's option. In addition, an additional payment will also become immediately due and payable, at TIE's option, equal to the average amount of all of the prior monthly payments payable under the Variable Monthly Payments multiplied by the total number of months remaining under this Agreement before the expiration of this Agreement.

12.   NON-COMPETITION

During the term of this Agreement and thereafter for _____ months, neither party will compete directly and/or indirectly with the other party. While this non-competition clause is in effect, REDWOOD will not induce, attract and/or solicit any person who is an employee of TIE to terminate and/or modify their employment arrangement with TIE, and TIE will not take part in and/or participate in the business of any company engaged in the design, printing and/or publication of any periodicals that are similar to Construction Trader.

///

13.   **BAD DEBT**

25% of bad debt under this Agreement will be allocated to TIE, and 75% of bad debt under this Agreement will be allocated to REDWOOD. For purposes of this Agreement, "bad debt" means uncollectible invoices for advertising sales generated by TIE. REDWOOD shall use its best efforts to collect amounts owing for advertising sales generated by TIE and to only write off invoices as bad debt if the following conditions are satisfied (unless agreed by TIE and REDWOOD in writing prior to the write off of said invoice):

   a)   The invoice has aged a minimum of no less than 120 days past due;
   b)   REDWOOD has attempted to collect the debt through its collection activity on no less than three occasions; and
   c)   REDWOOD provides TIE no less than 30 days to collect on said invoice.

After all these conditions are satisfied, REDWOOD will bill TIE 25% of the invoice copy which may be paid by TIE or set off by TIE in its next invoice to REDWOOD.

14.   **CHOICE OF LAW**

This Agreement shall be interpreted under the laws of Arizona.

15.   **ENTIRE AGREEMENT**

This Agreement and the attached Exhibit is the entire agreement of the parties with respect to the subject matter of this Agreement and takes the place of any prior understanding or agreement between the parties.

REDWOOD PUBLICATIONS

By: Mike Nelson                     10/29/07
CEO – Construction Trader

THE INSIDE EDGE, L.L.C.

By: Chris Christopherson
Owner and Operator

p. 22
Exh (

# EXHIBIT B

P. 23
Exh 1

SERVICES CONTRACT

FOR

REDWOOD PUBLICATIONS

This contract is made and entered into on this 3rd day of January, 2008 by and between REDWOOD PUBLICATIONS ("REDWOOD") and THE INSIDE EDGE ("TIE").

WHEREAS REDWOOD intends to print and publish a periodical known as the "Construction Trader";

WHEREAS REDWOOD has determined that it is legal, feasible and cost effective to contract with TIE to create an Inside Call Environment for producing advertising sales for the Construction Trader; and

WHEREAS TIE is a firm specializing in establishing Inside Call Environments and other services;

NOW THEREFORE, in consideration of the mutual covenants contained herein, and for good and valuable consideration, the parties agree to the following:

1.    CONTRACT TERM

Subject to Paragraph 5 below, this Agreement will commence January 3rd, 2008 and continue until December 31, 2008. The term of this Agreement will renew automatically on the terms and conditions stated in this Agreement for an additional 12 months following expiration of the initial or extended terms unless either party notifies the other, in writing, at least 60 days prior to the end of the then existing term of this Agreement of the terminating party's decision not to renew this Agreement.

2.    COMPENSATION AND INVOICES

TIE will invoice REDWOOD for all work performed during the prior month on the 11th of January, 2008 and on the 7th day of every month thereafter for work performed during the previous billing cycle as defined above. REDWOOD will pay TIE within ten days of the date of the invoice. TIE will be paid for its services as calculated below and pursuant to the following schedules:

**Fixed Monthly Payments**

For the purposes of this contract, each month will be defined as the billing cycles of the 8th of each month to the 7th of the following month.

p. 24
Exh 1

a) A payment of $30,000 for services performed for January 11th through February 7th b) a payment of $35,000 for services performed for the month of February 2008; c) a payment of $35,000 for services performed for the months March, April, May, and June of 2008.
d) monthly payments of $40,000 for services performed for the month of July 2008 and for every month thereafter and continuing until this Agreement is terminated.

### Variable Monthly Payments

a)      A percentage of 8% will be paid on all monthly sales.

### Quarterly Bonus Payments

Quarterly bonus payments equal to 2.5% of total sales orders for each quarterly period beginning with Issue January 2008 and continuing quarterly thereafter until this Agreement is terminated if quarterly total sales exceed 20% of total quarterly sales orders projections for any given quarterly period as set forth in the attached **Exhibit "A"**.

3.      TIE RESPONSIBILITIES

TIE will be responsible for and provide the following services:

a) Establishing an inside call environment and equipping office space with furniture, computers, printers, facsimile machines, telephones, and copiers;
b) Recruiting, hiring, staffing, developing, and managing sales representatives representing REDWOOD;
c) Designing, implementing, and managing operations, including training, pre-call planning, call execution, and post-call procedures;
d) Designing, implementing, and managing operational meetings, information technology, and the REDWOOD culture (including Performance Management); and
e) Establishing and reporting performance metrics for quotas (sales and activities), productivity (calls, contacts, and sales), and evolving strategic analytics (ACT to CNV to MNT, regional, types, etc.).

4.      REDWOOD RESPONSIBILITIES

REDWOOD is responsible for a) providing all leads to TIE for potential sales, which will be provided to TIE on an ongoing basis; b) collecting all monies resulting from the sales generated by TIE's efforts; c) drafting and publicizing the periodical that is the subject of this Agreement; and d) making timely payments to TIE for TIE's services.

5.      OPTION TO CANCEL OR RESTRUCTURE

TIE will use its best efforts to reach the sales projections as set forth in **Exhibit "A"**, and REDWOOD will use its best efforts to assist TIE in reaching the sales projections as set forth in **Exhibit "A"**.

P. 25
Exh 1

**Six Month Sales Projections**

If the total sales in the period of January 2008 through June 2008 do not exceed a minimum of 75% of sales projections as set forth in **Exhibit "A"**, REDWOOD will have the option to terminate this Agreement upon providing TIE with no less than 45 days notice of intent to cancel.  Alternatively, REDWOOD will have the right to restructure this agreement pursuant to the mutual agreement of both parties.

Any notice to terminate this Agreement under this Paragraph must be in writing and provided to TIE within 5 days after receipt by REDWOOD of the total actual sales numbers for any time period described in this Paragraph.

**3rd Quarter Sales Projections**

If the total sales in the period of Q3 (July through September of 2008) do not exceed a minimum of 75% of sales projections as set forth in **Exhibit "A"**, REDWOOD will have the option to terminate this Agreement upon providing TIE with no less than 30 days notice of intent to cancel.  Alternatively, REDWOOD will have the right to restructure this agreement pursuant to the mutual agreement of both parties.

Any notice to terminate this Agreement under this Paragraph must be in writing and provided to TIE within 5 days after receipt by REDWOOD of the total actual sales numbers for any time period described in this Paragraph.

**4th Quarter Sales Projections**

If the total sales in the period of Q4 (October through December of 2008) do not exceed a minimum of 75% of sales projections as set forth in **Exhibit "A"**, REDWOOD will have the option to terminate this Agreement upon providing TIE with no less than 30 days notice of intent to cancel.  Alternatively, REDWOOD will have the right to restructure this agreement pursuant to the mutual agreement of both parties.

Any notice to terminate this Agreement under this Paragraph must be in writing and provided to TIE within 5 days after receipt by REDWOOD of the total actual sales numbers for any time period described in this Paragraph.

6.      <u>ASSIGNMENT</u>

This Agreement may not be assigned by either party without the prior written concurrence of the other party.  Any assignment without such prior written concurrence will be null and void.

P.26
Exh.1

7.    MODIFICATION AND AMENDMENT OF TERMS

This Agreement may only be amended or otherwise modified by a writing signed by both REDWOOD and TIE.

8.    VALIDITY

The invalidity in whole or in part of any provision of this Agreement will not void or affect the validity of any other provision.

9.    NOTICES

Notices to TIE will be addressed to 525 Winncastle Street, Simi Valley, CA 93065 or such other address as may be hereinafter designated by TIE. Notices to REDWOOD will be addressed to 17750 W. Elliot Road, #10 Goodyear AZ 85338 or such other address as may be hereinafter designated by REDWOOD.

10.    ACCELERATION

If REDWOOD is sold, becomes insolvent and/or is dissolved prior to the expiration of this Agreement, all of the fixed monthly payments identified under the **Fixed Monthly Payments** schedule of Paragraph 2 will become immediately due and payable, at TIE's option. In addition, an additional payment will also become immediately due and payable, at TIE's option, equal to the average amount of all of the prior monthly payments payable under the **Variable Monthly Payments** multiplied by the total number of months remaining under this Agreement before the expiration of this Agreement.

11.    NON-COMPETITION

During the term of this Agreement and thereafter for 2 years, neither party will compete directly and/or indirectly with the other party.  While this non-competition clause is in effect, REDWOOD will not induce, attract and/or solicit any person who is an employee of TIE to terminate and/or modify their employment arrangement with TIE, and TIE will not take part in and/or participate in the business of any company engaged in the design, printing and/or publication of any periodicals that are similar to any publication of Redwood Publications currently set forth as Fire Trader and Construction trader.

P. 27
Exh 1

## EXHIBIT "A"

### 2008 Construction trader Sales Projections

| Month | WA/OR/ID Region | AZ/UT/NV Region | Total Sales |
|-------|-----------------|-----------------|-------------|
| Jan   | $30,000         | $0              | $30,000     |
| Feb   | $40,000         | $0              | $40,000     |
| Mar   | $50,000         | $25,000         | $75,000     |
| Apr   | $60,000         | $35,000         | $95,000     |
| May   | $70,000         | $45,000         | $115,000    |
| June  | $75,000         | $55,000         | $130,000    |
| July  | $80,000         | $60,000         | $140,000    |
| Aug   | $85,000         | $65,000         | $150,000    |
| Sept  | $90,000         | $70,000         | $160,000    |
| Oct   | $90,000         | $75,000         | $165,000    |
| Nov   | $90,000         | $80,000         | $170,000    |
| Dec   | $180,000*       | $160,000*       | $340,000*   |

*- Two Issues in Dec

P. 28
Exh 1

p. 29
Exh 2

**EXHIBIT 2**

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MIKE NELSON, an individual; REDWOOD PUBLICATIONS, L.L.C.,
an Arizona limited liability company; CONSTRUCTION TRADER, a
business entity of unknown form; and DOES 1 through 25, inclusive

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

MAR 9 0 2008

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THE INSIDE EDGE, L.L.C., a California limited liability company

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

CASE NUMBER:
*(Número del Caso):*
**LC080878**

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles County Superior Court
Northwest District
6230 Sylmar Avenue
Van Nuys, CA  91401
Van Nuys Courthouse East

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael H. Raichelson, Esq. (SBN 174607)      Tel:  (818) 992-9999   Fax:  (818) 992-9991
ROXBOROUGH, POMERANCE & NYE, LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, CA  91367

DATE: _____      Clerk, by _____, Deputy
*(Fecha)*                            *(Secretario)*                               *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. [  ] as an individual defendant.
2. [  ] as the person sued under the fictitious name of *(specify):*

3. [  ] on behalf of *(specify):*

   under: [  ] CCP 416.10 (corporation)        [  ] CCP 416.60 (minor)
          [  ] CCP 416.20 (defunct corporation) [  ] CCP 416.70 (conservatee)
          [  ] CCP 416.40 (association or partnership) [  ] CCP 416.90 (authorized person)
          [  ] other *(specify):*
4. [  ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

P. 30
Exh 2

**PROOF OF SERVICE**

STATE OF ARIZONA    )
                       ) ss
COUNTY OF MARICOPA )

    I, _Teresa Lujan_, am employed in the aforesaid County, State of Arizona; I am over the age of 18 years and not a party to the within action; my business address is 3003 North Central Avenue, Suite 2600, Phoenix, AZ 85012.

    On April 22, 2008 I served the foregoing **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C 1441(b) (DIVERSITY)** on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, and sent via U.S. Postal Service:

        Michael H. Raichelson, Esq.
        Roxborough, Pomerance & Nye, LLP
        5820 Canoga Avenue, Suite 250
        Woodland Hills, CA 91367
        Telephone: 818.992.9999
        Facsimile:  818.992.9991

___ **BY MAIL/FEDERAL EXPRESS**

    ___ I placed such envelope for deposit in a Federal Express dropbox for service by Federal Express delivery, with postage thereon fully prepaid.

    ✓ As follows:  I am "readily familiar" with the office's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Phoenix, Arizona in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___ **BY FACSIMILE/ELECTRONIC TRANSMISSION**

    ___ I caused such document to be delivered by facsimile and electronic transmission to the above addressee(s).

___ **BY PERSONAL SERVICE**

    ___ I delivered such envelope by hand to the offices of the addressee(s).
    ___ I caused such envelope to be delivered by hand to the offices of the addressee(s).

**PROOF OF SERVICE TO BE FILED**.

___ (State) I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true  and correct.

✓ (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 22, 2008, at Phoenix, Arizona.

_____
Signature of Declarant

FENNEMORE CRAIG, P.C.
PHOENIX

- 4 -

NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C 1441(b) (DIVERSITY)

p. 31

**NOTICE OF ASSIGNMENT TO
MAGISTRATE JUDGE FOR DISCOVERY (CV-18)**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## CV08- 2665 AHM (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT,
# CENTRAL DISTRICT OF CALIFORNIA
# CIVIL COVER SHEET (CV-71)

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>THE INSIDE EDGE, LLC, a California limited liability company | DEFENDANTS<br>MIKE NELSON, an individual; REDWOOD PUBLICATIONS, LLC, an Arizona limited liability company; CONSTRUCTION TRADER, a business entity of unknown form; and DOES 1 through 25, inclusive |
|---|---|
| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):<br>Los Angeles  County, California | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):<br>Maricopa, County, Arizona |
| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>ROXBOROUGH, POMERANCE & NYE, LLP - (818) 992-9999<br>Michael H. Raichelson<br>5820 Canoga Avenue, Suite 250<br>Woodland Hills, CA 91367 | Attorneys (If Known)<br>FENNEMORE CRAIG, P.C. - (602) 916-5000<br>Amy Abdo (CBN 148996)<br>3003 North Central Avenue, Suite 2600<br>Phoenix, Arizona 85012-2913 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332; 28 U.S.C. § 1441(b).  Plaintiff brings claims for fraud and breach of contract.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☒ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No  ☐ Yes

If yes, list case number(s):  N/A

**FOR OFFICE USE ONLY:**   Case Number: _____

CV08-02665

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

---

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): N/A

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
    The Inside Edge, LLC:  Los Angeles County, California

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
    Mike Nelson:  Maricopa County, Arizona
    Redwood Publications:  Maricopa County, Arizona

List the California County, or State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
    Los Angeles County, California; Arizona

---

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Amy Abdo_      Date _April 22 2008_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

---

p. 36